UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKI LEVENE NASH,

        Plaintiff,                   Case No. 2:16-cv-14016
                                  District Judge Robert H. Cleland
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**<ins>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 14),  GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 18) AND AFFIRM THE
COMMISSIONER'S DECISION</ins>**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 18),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Vicki Levene Nash, brings this action under 42 U.S.C. §§ 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance (DI) benefits.

This matter is before the Undersigned for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 14), the Commissioner's cross-motion for summary judgment (DE 18), and the administrative record (DE 11).

### A.    Background and Administrative History

Plaintiff alleges her disability began on December 5, 2008, at the age of 45. (R. at 139.)  She lists several conditions (depression, back problems/injury, heart stints) that limit her ability to work.  (R. at 166.)  Her application for DI was denied on February 5, 2014.  (R. at 86-103.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 104-105.)  ALJ Patricia S. McKay held a hearing, and, on July 28, 2015, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-30.)  On Thursday, September 8, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-8.)  Thus, ALJ McKay's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on Friday, November 11, 2016.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains more than 743 pages of medical records, of which Exhibits 1F through 14F were available to the ALJ at the time of his July 28, 2015 decision.  (R. at 30, 221-963.)  These records will be discussed in detail, as necessary, below.

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

Plaintiff testified at the April 13, 2015 hearing, when she was 51 years old. (R. at 44-72.)  As Plaintiff is expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will refer to Plaintiff's testimony as necessary below.

#### 2.    Vocational Expert Testimony

Vocational expert (VE) Scott Silver testified at the hearing, providing answers to several hypothetical questions.  (R. at 72-83, 215, 218.)

### D.    The Administrative Decision

On July 28, 2015, ALJ McKay issued her decision.  (R. at 9-30.)  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 5, 2008 through her date last insured of December 31, 2013.  (R. at 14-15.)  At **Step 2**, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments:  coronary artery disease status post stent placement and a history of myocardial infarction, hypertension and high cholesterol, degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral hips, bipolar disorder, major depressive disorder and anxiety disorder.  (R.

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

at 15.)  At **Step 3**, the ALJ found that, though the date last insured, Plaintiff did not

have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments.  (R. at 15-18.)  Between **Steps 3 and**

**4** of the sequential process, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[2] and determined that, through the date last insured, Plaintiff had

the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b)
> [*exertional limitations*] except: she is limited to occasional climbing
> stairs, crouching, crawling, kneeling, or stooping/bending [*postural
> limitations*]; she is not able to work around hazards such as moving
> machinery or unprotected heights [*environmental limitations*]; she is
> limited to occasionally using foot controls with her lower extremities
> [*exertional limitations*]; she is limited to work that is simple and
> routine; she is not able to work at a production rate; and, she is able to
> tolerate only occasional contact with supervisors, coworkers and the
> public [*mental limitations*].

(R. at 18-24.)  At **Step 4**, the ALJ determined that, through the date last insured,

Plaintiff was unable to perform any past relevant work.  (R. at 24.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that, through the date last insured, there were jobs that existed in

significant numbers in the national economy that Plaintiff could have performed.

(R. at 25-26.)  The ALJ therefore concluded that Plaintiff was not under a

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

disability, as defined in the Social Security Act, at any time from December 5, 2008, the alleged onset date, through December 31, 2013, the date last insured.  (R. at 26.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

F.      **Analysis**

1.      **Credibility**

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible for the reasons explained in the decision.  (R. at 19.)  Plaintiff challenges this conclusion,

arguing that the ALJ did not give proper weight to her complaints of pain and psychiatric conditions/medications[,]" and citing 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain.") and SSR 96-7p ("Assessing The Credibility Of An Individual's Statements").  (DE 14 at 24-26.)

### a.   Side effects from medication

Plaintiff credibility argument appears to have three components, the first of which is that her "testimony at the hearing was noted to be consistent with the information she provided to her doctors and explains her functional limitations." (DE 14 at 25.)  Frankly, it is unclear to which portion of the record Plaintiff refers. Nonetheless, the ALJ credited Plaintiff's testimony with respect to side effects:

> While the claimant initially reported no side effects from medications, she later indicated adverse side effects from medications including difficulty concentrating and drowsiness (5E/9 [R. at 188]; Hearing Testimony).  These adverse side effects have been accounted for, and are consistent with, the reduced mental residual functional capacity assessed in this decision.

(R. at 21.)  *See* 20 C.F.R. § 404.1529(c)(3)(iv).  The ALJ expressly cited Plaintiff's November 11, 2013 list of 5 medications, each of which had a listed side effect of "none." (R. at 188.)  She then compared it to Plaintiff's hearing testimony.  While the citation was not specific, the hearing certainly touched upon side effects.  (R. at 56, 61.)  Most importantly, the ALJ credited these allegations with a "reduced mental [RFC][,]" and Plaintiff has failed to show that it inadequately addresses difficulty concentrating and drowsiness.

**b.** **Hearing Testimony**

Plaintiff takes issue with the ALJ's references to "inconsistency in the testimony" with only a generic reference to the "Hearing Testimony." (DE 14 at 26.) As an initial matter, the Court notes the ALJ makes such references throughout her decision, no less than one time in the introduction (R. at 12), four times at Step 3 (R. at 17-18), 12 times within the RFC determination (R. at 19-22), and two times at Step 4 (R. at 24.) To the extent Plaintiff takes issue with this mode of referencing the April 13, 2015 transcript - particularly as to the reference to "Hearing Testimony" at Page 19 of the record (*see* DE 14 at 26) - she has not shown how the ALJ's related statement is not supported by the hearing testimony. Nor has Plaintiff cited any case law requiring the ALJ to specifically point to a given page of this approximately 48-page transcript (R. at 38-85).

More specifically, the ALJ made several such references in explaining why Plaintiff's "overarching allegations of disability [we]re less than fully credible . . . [,]" such as the following:

> First, while the claimant testified that she could only stand for twenty to thirty minutes and lift ten to fifteen pounds, the record demonstrates she can do more (**Hearing Testimony**). The medical evidence of record indicated that the claimant had full range of motion, intact strength, a normal gait, and was able to squat and perform heel, toe and tandem walking (2F/2; 2F/4; 2F/10; 2F/24; 2F/28; 2F/45; 2F/49; 5F/2-7). *These findings are consistent with the reduced light residual functional capacity.* Additionally, the claimant alleged difficulty getting along with others and with concentration due to her mental impairments (5E/6-7; **Hearing Testimony**). However, the medical

8

> records indicate that the claimant was often pleasant and cooperative
> with an appropriate mood and affect (2F/14; 2F/27; 3F/4; 6F/3; 7F/5;
> 7F/15). Moreover, the claimant was routinely alert and oriented, with
> normal memory, focused concentration and a goal directed and logical
> thought process (2F/5; 2F/9; 2F/14; 2F/21; 2F/27; *2Fl40;* 2F/43;
> 2F/51; 2F/53; 3F/5; 3F/9; 4F/3; 6F/3; 7F/5; 7F/15). These findings are
> not consistent with the claimant's allegations of totally disabling
> limitations.

(R. at 21-22 (emphases added).)

It was not difficult for the Court to locate Plaintiff's April 13, 2015 testimony about the weight she can lift (*see* R. at 47-48, 62-63), as well as her November 11, 2013 contention that she cannot lift anything too heavy, because her back is getting worse (R. at 186), and the ALJ elsewhere expressly noted state agency medical consultant U. Gupta, M.D.'s February 4, 2014 opinion that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds (R. at 22, 95).  Plaintiff asserts that "the testimony does not reflect . . . increased physical abilities . . . ."  (DE 14 at 11-12.)  However, to the extent Plaintiff intended to challenge the reduced light RFC, her statement that the ALJ "discredit[ed] her contentions that she had more serious restrictions[,]" (DE 14 at 25), fails to show how.

The ALJ also pointed to Plaintiff's November 11, 2013 representations that she had difficulty getting along with others and concentrating and, at the same time, pointed to the hearing testimony, during which there was much discussion about concentration.  (R. at 22, 53, 56-57, 61, 67, 185-186.)  In sum, the ALJ's

generic citations to the "Hearing Testimony" are not a basis for invalidating her

credibility determination.

### c.     Compliance with treatment and lack of insurance

The second component of Plaintiff's credibility argument concerns

discrediting Plaintiff for non-compliance with treatment.  An ALJ may consider a

claimant's failure to comply with treatment as a sufficient reason to discount

credibility.  *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir.

1988) (concluding that the ALJ properly discounted the claimant's credibility

where he failed to follow prescribed treatment); S.S.R. 96–7p, 1996 WL 374186, at

*8 (noting that "the individual's statements may be less credible if ... the medical

reports or records show that the individual is not following the treatment as

prescribed and there are no good reasons for this failure.").  Pursuant to Social

Security Ruling 96-7P, however, an ALJ may not draw:

> any inferences about an individual's symptoms and their functional
> effects from a failure to seek or pursue regular medical treatment
> without first considering any explanations that the individual may
> provide, or other information in the case record, that may explain
> infrequent or irregular medical visits or failure to seek medical
> treatment.

S.S.R. 96-7P.  For example, the ALJ should consider the claimant's explanation

where the individual "may be unable to afford treatment and may not have access

to free or low-cost medical services."  *Id.*  Similarly, Social Security Ruling 82-59

provides that inability to afford treatment is a justifiable cause for failing to follow

prescribed treatment.  S.S.R. 82-59; *see also McKnight v. Sullivan*, 927 F.2d 241,

242 (6th Cir. 1990) (agreeing with the conclusion that a "condition that is disabling

in fact continues to be disabling in law," when the claimant "cannot afford

prescribed treatment or medicine and can find no way to obtain it.") (internal

quotations omitted).

Before testimony began on April 13, 2015, Plaintiff's counsel alerted the

ALJ that Plaintiff "hasn't seen a psychiatrist in the last few months because of, I

believe, insurance issues, and the doctor left that practice.  She's looking for

someone new.  She's had the medication, however[.]"  (R. at 42.)  Plaintiff's

counsel confirmed that Plaintiff was "in transition" on "mental health treatment."

(*Id.*)  Subsequently, during Plaintiff's testimony, Plaintiff stated that she could not

afford the physical therapy recommended for her back.  (R. at 59.)  Relatedly, the

following exchange took place:

> Q      So you're also having some mental health treatment. It sounds
> like you're in between treatment right now, is that right, because of
> insurance?
>
> A      My therapist, she -- well, she left.  She relocated.  So it's hard to
> find another one.
>
> Q      Okay.
>
> A      I need one.
>
> Q      How often do you go in for treatment?
>
> A      For the therapist?

Q      Yes.

A      Every week.

Q      Weekly? And how long are your sessions?

A      An hour each.

Q      Okay. Are you taking medication? You are taking medication --

A      Yes.

Q      -- to assist you, right? Okay.

(R. at 60.)  As to this issue, the ALJ's credibility determination included the

following paragraph:

> The claimant's conservative treatment and noncompliance with
> recommended treatment suggests that her impairments are not as
> severe as she alleges.  While the claimant takes prescription
> medication, she has not reported any additional treatment for her
> degenerative disc disease of the lumbar spine or degenerative joint
> disease of the bilateral hips, including physical therapy, use of a
> TENS unit, injections, nerve blocks or surgery.  Moreover, there is no
> indication in the record that the claimant's treating physicians have
> recommended any greater treatment modalities.  The claimant's
> conservative treatment suggests that her physical pain is not as severe
> as she alleges.  *Furthermore, the claimant has been noncompliant
> with underlined recommended mental treatment.  In October 2012, the claimant's
> physician noted that she left the office without being seen (2F/12 [R.
> at 279]).  The claimant's noncompliance with medical treatment
> suggests that her impairments are not as severe as she alleges.*

(R. at 22 (emphasis added).)

Among the potential justifications for a "failure to follow prescribed

treatment" is being "*unable to afford prescribed treatment which he or she is*

12

*willing to accept, but for which free community resources are unavailable*." SSR

82-59, 1982 WL 31384 at *4 (SSA 1982).  This ruling further explains:

> Although a free or subsidized source of treatment is often available,
> the claim may be allowed where such treatment is not reasonably
> available in the local community.  All possible resources (e.g., clinics,
> charitable and public assistance agencies, etc.), must be explored.
> Contacts with such resources and the claimant's financial
> circumstances must be documented.  Where treatment is not available,
> the case will be referred to [vocational rehabilitation].

SSR 82-59.  Plaintiff takes issue with the fact that the ALJ's decision does not

mention the "lack of applicable health insurance which was claimed to limit

treatment options including the inability to obtain physical therapy." (DE 14 at

26.)  The Commissioner responds that this is a mischaracterization of the record

and that Plaintiff "never testified that she lacked insurance to pursue physical

therapy or mental health treatment." (DE 18 at 13.)  However the testimony is

characterized, it does appear that the ALJ's decision fails to address Plaintiff's lack

of insurance or inability to pay for such treatment.

   Nonetheless, Plaintiff's argument on this issue is undeveloped.  While the

introduction of Plaintiff's motion cites the "noncompliance" portion of the ALJ's

decision (DE 14 at 12, R. at 22), as well as the above-cited portions of the hearing

testimony (DE 14 at 19, 21; R. at 42, 59-60), Plaintiff's simply asserts that the

ALJ's decision does not discuss or mention "the lack of insurance . . .[,]" and, in so

doing, cites an unrelated page of the hearing testimony.  (DE 14 at 25-26, R. at 64.)

Likewise, as the Commissioner points out, Plaintiff "has not made any showing that she explored all of her options to afford additional treatment, particularly during the relevant period prior to her DLI of December 31, 2013[.]" (DE 18 at 13 (citing SSR 82-59).)  Moreover, the specific "noncompliance" to which the ALJ refers is an October 2, 2012 progress record – in which the chief complaint was stomach pain – which appears to state that Plaintiff "left without being seen." (R. at 22, 279.)  Thus, notwithstanding the fact that the ALJ stated that Plaintiff "has been noncompliant with recommended *mental* treatment[,]" (R. at 22 (emphasis added)), the ALJ may well have intended to use the adjective "*medical*."  In either event, the criticism of noncompliance does not appear to be related to an inability to afford the visit.  In other words, it does not appear that the ALJ was attempting "to state a history of non-compliance" which Plaintiff argues "is not supported by the medical records especially given the stated difficulties related to health insurance coverage." (DE 14 at 12.)  Furthermore, when asked by the ALJ if she was "in between treatment…because of insurance[,]" Plaintiff gave a *different* reason for the hiatus in treatment, namely, her therapist "left.  She relocated.  So it's hard to find another one." (R. at 60.)  Finally, the ALJ's observation that Plaintiff had "conservative treatment" for her orthopedic ailments does not fault her for failing to pursue it; rather, it observes that, "there is no indication in the

record *that the claimant's treating physicians have recommended* any greater

treatment modalities."  (R. at 22) (emphasis added).

### d.      In sum

Plaintiff argues that the ALJ did not properly weight Plaintiff's complaints

of pain and psychiatric conditions/medications.  (DE 14 at 24.)  However, she has

failed to illustrate why the ALJ should have decided otherwise.  *Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the

claimant has the burden of proof; this burden shifts to the Commissioner only at

Step Five.").  Importantly, the ALJ's "assessment of credibility is entitled to great

weight and deference, since he [or she] had the opportunity to observe the

witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008)

(citing *Walters*, 127 F.3d at 531).  As noted earlier in this report, "[i]t is of course

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers*, 486 F.3d at 247.  It is for this reason that

the ALJ's credibility findings have at times been characterized as unchallengable."

*Payne v. Comm'r Soc. Sec.,* 402 F.App'x 109, 113 (6th Cir. 2010); *see, Heston v.*

*Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may

not review a determination of credibility.  'It is for the Secretary and his examiner,

as the fact-finders, to pass upon the credibility of the witnesses and weigh and

evaluate their testimony.'") (quoting *Myers v. Richardson,* 471 F.2d 1265, 1267

15

(6th Cir. 1972)) (alteration omitted).  Moreover, "[d]iscounting credibility to a

certain degree is appropriate where an ALJ finds contradictions among the medical

reports, claimant's testimony, and other evidence."  *Walters,* 127 F.3d at 531.

Bearing this standard of review in mind, and considering Plaintiff's failure to

demonstrate error on this issue, the credibility determination should be upheld.

### 2.    RFC

Plaintiff claims the ALJ "never factored the full scope of [Plaintiff's]

medical and mental conditions into [the] RFC determination."  Oddly, Plaintiff's

RFC challenge preliminarily contends that the ALJ did not sufficiently discuss the

20 C.F.R. § 404.1529(c) factors, which bears on credibility.  (DE 14 at 26.)

Plaintiff contends these factors "clearly are a bar to full time employment[,]" (DE

14 at 26-27.)  For the reasons stated above, she has failed to adequately challenge

the ALJ's credibility determination.

Plaintiff next claims the ALJ did not comply with SSR 96-8p ("Assessing

Residual Functional Capacity In Initial Claims").  In a mixed series of assertions,

Plaintiff appears to challenge both the exertional and nonexertional limitations.

(DE 14 at 27-31.)

### a.    Exertional limitations

At Step 2, the ALJ found that Plaintiff had the severe physical health

impairments of coronary artery disease status post stent placement and a history of

myocardial infarction, hypertension and high cholesterol, degenerative disc disease

of the lumbar spine, and degenerative joint disease of the bilateral hips.  (R. at 15.)

The ALJ found that Plaintiff had the exertional limitations of light work as defined

in 20 C.F.R. § 404.1567(b), except, "she is limited to occasionally using foot

controls with her lower extremities[.]"  In addition, the ALJ assessed postural

limitations of occasional stair climbing, crouching, crawling, kneeling, or

stooping/bending.  (R. at 18.)  In no less than five cases, the ALJ explained her

reasons for the "reduced light residual functional capacity," (R. at 20-22), in one

case specifically referencing the "foot controls:"

> Moreover, *the medical evidence of record with respect to the
> claimant's degenerative disc disease of the lumbar spine and
> degenerative joint disease of the bilateral hips further supports a
> reduced light [RFC] with occasional climbing of stairs, crouching,
> crawling, kneeling, stooping, or bending, occasional use of foot
> controls with the lower extremities, and no work around hazards such
> as moving machinery or unprotected heights.*  In September 2008, an
> x-ray of the lumbar spine revealed no lumbar vertebral compression
> fracture, deformity or subluxation, no evidence of spondylosis or
> spondylolisthesis, and intact sacroiliac joint spacings and sacral
> foramina (lF/34 [R. at 254]).  An x-ray of the pelvis and right hip
> showed some degenerative changes of the right hip as well as the left
> hip, and some narrowing of both joint spaces, more so on the right
> than on the left (lF/35 [R. at 255]).  In February 2009, an MRI of the
> lumbar spine demonstrated a right paracentral disc extrusion at L4 to
> L5 impinging the right L5 nerve and the lateral recess of L5 and
> moderate bilateral foraminal stenosis at L4-5 and L5-S1 (lF/33 [R. at
> 253]).

(R. at 20 (emphasis added); *see also* R. at 16, 252-253, 348-349, 391-392.)  In

assessing the physical opinion evidence, the ALJ assigned "little weight" to the

state agency medical consultant U. Gupta, M.D.'s February 4, 2014 opinion (R. at 87-99) and "little weight" to the January 10, 2014 CE report of Jose Mari G. Jurado, M.D. (R. at 484-491). (R. at 22-23.)

In the introductory portion of her brief, Plaintiff points to September 15, 2008 xrays (R. at 254-256, 346, 396), an April 29, 2008 EMG (R. at 257, 398-401), and a February 6, 2009 MRI (R. at 252-253, 348-349, 391-392). She claims this is "direct objective evidence of a severe spinal condition." (R. at 13-14.) However, Plaintiff's *non-specific argument* that the RFC "to perform 'light' level employment is not supported by the record including Ms. Nash's abilities to utilize foot controls or the results of the MRI examination," (DE 14 at 30), does not illustrate how the ALJ's consideration of the medical evidence of record was inaccurate or how the ALJ's physical RFC fails to accommodate Plaintiff's severe physical impairments.

Plaintiff claims that "the vocational testimony was in response to vague and non-precise hypothetical questions that simply stated a 'light' physical exertion ability without inquiring as to whether the limitations in this case limited her to 'sedentary' or an inability to perform gainful activity." (DE 14 at 27; *see also* DE 14 at 30.)[3] However, if Plaintiff intended to take issue with the ALJ's inquiry into

---

[3] As Plaintiff points out, the regulations describe work in terms of sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567 ("Physical exertion requirements."). (DE 14 at 28.)

sedentary work "[d]espite the direct application of the grid rules to the situation . . .

[,]" (R. at 21, 78, 80), she has failed to successfully challenge the ALJ's reduced

light RFC.

### b.    Nonexertional limitations

Plaintiff claims that the RFC did not take into consideration and improperly

discounted her nonexertional limitations.  (DE 14 at 29-30.)  As noted above, at

Step 2, the ALJ found that Plaintiff had the severe mental health impairments of

bipolar disorder, major depressive disorder, and anxiety disorder.  (R. at 15.)  The

ALJ found that Plaintiff had the following nonexertional limitations:  "she is

limited to work that is simple and routine; she is not able to work at a production

rate; and, she is able to tolerate only occasional contact with supervisors,

coworkers and the public."  (R. at 18.)

In so doing, the ALJ assigned "little weight" to the January 31, 2014

assessment of state agency psychological consultant Ashok K. Kaul, M.D. (R. at

94) and "partial weight" to the January 10, 2014 mental status examination of Julia

A. Czarnecki, M.A., L.L.P., and licensed psychologist Nick Boneff, Ph.D. (R. at

479-483).  (R. at 23.)  Also, while the ALJ noted GAF scores of 48 to 50 (R. at

434, 438, 440), and stated that she "generally gives less weight to a specific GAF

score . . . [,]" and gave "more weight" to "other evidence," she nonetheless gave

"partial weight to the GAF scores in this case[.]"  (R. at 23-24.)  Additionally, the

ALJ's decision contains multiple references to the December 7, 2013 psychiatric

evaluation report by Prameela Baddigam, M.D., who appears to have been

Plaintiff's examining, if not treating, psychiatrist. (R. at 17, 21-24, 494; *see also*

R. at 555.)

Plaintiff argues that her GAF scores indicate "a disabling condition." (DE

14 at 13.) Plaintiff claims that "there are no possible objective signs of the

depression and anxiety conditions . . . [,]" and further claims that the ALJ's

summary rejection of the psychiatric notes "without even identifying the providers

is not appropriate." (DE 14 at 28.) Similarly, when referencing ALJ McKay's

statement that she generally discounts "a specific GAF score" in comparison to

"the bulk of other, more convincing evidence[,]" Plaintiff contends that the ALJ

"discounted unnamed opinions of treating mental healthcare providers[.]" (DE 14

at 10-11, R. at 23-24.) However, the pertinent paragraph of the ALJ's decision

makes specific page references to the record; in fact, Plaintiff notes the references

to Exhibits 2F (Melcades P. Webster, D.O.), 3F (Katharine Alfs, M.A,

L.P.C./Henry Ford Macomb Hosp Labs), 4F (Julie A. Czarnecki, M.A., L.L.P. / N.

Boneff, Ph.D., L.P.), 6F (Baddigam Family Psychiatric Association), and 7F (Mt

Clemens Regional Medical Center). (DE 14 at 11.) Thus, the source of this

material is discernible. Moreover, there is nothing inappropriate about the ALJ's

treatment of GAF scores.  As the Court of Appeals noted in *DeBoard v. Comm'r of Soc. Sec.*, 211 F.App'x 411 (6th Cir. 2006):

> We have previously held that the failure to reference a Global
> Assessment Functioning score is not, standing alone, sufficient ground
> to reverse a disability determination.  Moreover, the Commissioner
> has declined to endorse the [Global Assessment Functioning] score
> for use in the Social Security and [Supplemental Security Income]
> disability programs, and has indicated that [Global Assessment
> Functioning] scores have no direct correlation to the severity
> requirements of the mental disorders listings.  Accordingly, we have
> affirmed denials of disability benefits where applicants had Global
> Assessment Functioning scores of 50 or lower.

*DeBoard*, 211 F.App'x at 415 (internal quotations and citations omitted)

(referencing *Smith v. Comm'r of Soc. Sec.,* 74 F.App'x 548 (6th Cir. 2003) (Global

Assessment Functioning score of 48); *Nierzwick v. Comm'r of Soc. Sec.,* 7 F.App'x

358 (6th Cir. 2001) (Global Assessment Functioning score of 35); *Thurman v.*

*Apfel,* 211 F.3d 1270 (6th Cir. 2000) (Global Assessment Functioning score of

50)).

In what is apparently a nod to 20 C.F.R. § 404.1527(c)(2)(i) ("Length of the

treatment relationship and the frequency of examination."), Plaintiff claims that

"[t]he longitudinal treatment clearly supports the existence of severe cognitive

impairments which the treating physicians deemed to be disabling with the need

for ongoing supervision and cognitive therapies."  (DE 14 at 28.)  Plaintiff

contends that "the longitudinal course of mental health care and treatment" with

her primary care physician "clearly indicates a severe psychiatric condition."  (DE

14 at 30.)  Neither of these statements is accompanied by a citation to the medical

evidence of record.  Even so, while the introductory portion of Plaintiff's brief

Plaintiff identifies Melcades P. Webster, D.O. as a "primary physician," and cites

certain of her 2008 and 2009 records that allegedly indicate, among other things,

anxiety and depression (DE 14 at 13-14), these references do not illustrate to the

Court how the ALJ's consideration of the opinion evidence was improper under 20

C.F.R. § 404.1527(c) ("How we weigh medical opinions.").[4]  The Court is not

properly tasked with reweighing this evidence or with interpreting raw medical

data, if any.

### c.    Recap

Plaintiff claims that there are "objective MRI examinations, pelvic xray

examinations, the prescription of pain and mental health medications and a

longitudinal course of treatment that merit a reversal especially considering the

acknowledged consistent earnings history."  (DE 14 at 31.)  However, she has

failed to show error in the ALJ's physical or mental RFC determination, which it is

her burden to do.  *Walters*, 127 F.3d at 529.  Thus, the RFC should be upheld.

### G.    Conclusion

---

[4] Specifically, Plaintiff cites to R. at 313-317, 321-324, 328, 331, 348.  (DE 14 at
14.)  The Court cannot help but notice that, at various times in Plaintiff's brief, she
uses font that is well below the dimension required by E.D. Mich. LR 5.1(a)(3)
("Type Size.").  *See also* E.D. Mich. LR 7.1(d)(3) ("Length of Briefs").  Should
Plaintiff's counsel do so in the future, he risks having his briefs stricken.

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 18), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  February 22, 2018          s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing documents was sent to parties of
record on February 22, 2018, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti